UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
THE CEMETERY WORKERS SUPPLEMENTAL
PENSION FUND, by its TRUSTEES SAL
ALLADEEN and KEVIN BOYD,

                Plaintiff,                              REPORT AND
                                                                                RECOMMENDATION
       -against-                                               19 CV 6897 (RPK)(RML)

THE LUTHERAN ALL FAITHS CEMETERY,

                Defendant.
----------------------------------------------------------------X
LEVY, United States Magistrate Judge:

       By order dated May 17, 2021, the Honorable Rachel P. Kovner, United States District Judge, referred plaintiff's motion for summary judgment to me for report and recommendation. For the reasons stated below, I respectfully recommend that plaintiff's motion be granted.

## BACKGROUND AND FACTS

       The following facts are drawn from the pleadings, plaintiff's Local Rule 56.1 Statement,[1] and the papers submitted in support of the instant summary judgment motion. The facts cited are undisputed unless otherwise noted.

---

[1] Under Local Civil Rule 56.1, a party opposing a motion for summary judgment is required to submit a "Statement of Material Facts upon which it contends there 'exists a genuine issue to be tried' and . . . 'each statement controverting any statement of material fact . . . must be followed by citation to evidence which would be admissible . . . .'" Spindler v. Great N. Ins. Co., No. 13 CV 5237, 2016 WL 921646, at *4 (E.D.N.Y. Feb. 2, 2016) (quoting Local Civ. R. 56.1(d) and collecting cases), report and recommendation adopted, 2016 WL 899266 (E.D.N.Y. Mar. 9, 2016). Where, as here, a party opposing summary judgment fails to "properly controvert a movant's statement of material fact, such statement will be deemed admitted for the purposes of the motion.'" Id. (quoting Local Civ. R. 56.1(c)).

Plaintiff The Cemetery Workers Supplemental Pension Fund ("the Pension Fund"), by its Trustees Sal Alladeen and Kevin Boyd, commenced this lawsuit on December 9, 2019, seeking to recover withdrawal liability and attendant damages owed by defendant The Lutheran All Faiths Cemetery ("All Faiths Cemetery" or "defendant"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381, et seq. ("MPPAA"). (See Complaint, dated Dec. 9, 2019 ("Compl."), Dkt. No. 1.)

The Pension Fund is a jointly-trusteed defined benefit pension fund, administered by a Board of Trustees appointed in equal numbers by the sponsoring union and participating employers. (Rule 56.1 Statement, dated Oct. 12, 2020 ("Rule 56.1 Statement"), Dkt. No. 24-1, ¶ 1; Declaration of Zachary R. Harkin, Esq.[2] in Support of Plaintiff's Motion for Summary Judgment, dated Oct. 9, 2020 ("Harkin Decl."), Dkt. No. 26, ¶ 3.) As of 2019, and for many years prior, United Service Workers Union Local 74 ("Local 74") was the collective bargaining representative of a bargaining unit comprised of workers employed by All Faiths Cemetery as full and part-time gravediggers, grounds keepers, and mechanics (referred to herein as "Local 74 bargaining unit employees"). (Rule 56.1 Statement ¶ 2; Answer to Amended Complaint, dated Mar. 13, 2020 ("Answer to Am. Compl."), Dkt. No. 16, ¶ 8.)

Local 74 and All Faiths Cemetery were signatories to collective bargaining agreements ("CBAs") and Memoranda of Agreement ("MOAs"), which established the terms and conditions for employment of Local 74 bargaining unit employees, including that All Faiths Cemetery would make monthly contributions to the Pension Fund in specified amounts on behalf

---

[2] Zachary R. Harkin, Esq. is the Administrator of the Local 74 USWU Benefit Funds, including the Cemetery Workers Supplemental Pension Fund.

2

of covered employees. (Rule 56.1 Statement ¶¶ 3-4; Harkin Decl. ¶¶ 4, 6; Answer to Am. Coml. ¶ 9.) As established by the 2008-2012 MOA, and the agreements pre-dating it, All Faiths Cemetery was a participating employer in the Pension Fund and its eligible employees are participants in the Pension Fund. (Rule 56.1 Statement ¶ 7; Harkin Decl. ¶ 5; 2008-2012 MOA, annexed as Ex. A to the Harkin Decl., Dkt. No. 26-1. See also Notice to Admit,[3] dated July 16, 2020, annexed as Ex. F to the Declaration of Gary Silverman, Esq., dated Oct. 12, 2020 ("Silverman Decl."), Dkt. No. 28-1, ¶ 1.) Additionally, under the 2013-2017 MOA—the most recent labor agreement, which extended and incorporated the 2008-2012 MOA—All Faiths Cemetery had an obligation to contribute to the Pension Fund and agreed to comply with the default contribution schedule under the rehabilitation plan adopted by the Pension Fund. (2013-2017 MOA, annexed as Ex. B to the Harkin Decl., Dkt. No. 26-2.) In accordance with these agreements, All Faiths Cemetery made contributions to the Pension Plan. (Rule 56.1 Statement ¶ 6; Harkin Decl. ¶ 6.)

On December 31, 2017, the Pension Fund terminated as a result of a mass withdrawal. (Rule 56.1 Statement ¶ 5; Harkin Decl. ¶ 6.) Consistent with the MPPAA, on June 27, 2018, the Pension Fund notified All Faiths Cemetery of its initial withdrawal liability assessment in the sum of $707,815, payable in thirty-four quarterly installments of $24,875, with

---

[3] Pursuant to Rule 36 of the Federal Rules of Civil Procedure, plaintiff requested that defendant answer separately and fully in writing five requests for admission. Plaintiff's counsel attests that the Notice to Admit and attached exhibit was emailed to Regina Faul, Esq. on July 16, 2020, and that defendant did not respond or object to the Notice to Admit within the 30-day time limit prescribed by Rule 36. (Declaration of Gary Silverman, Esq., dated Oct. 12, 2020 ("Silverman Decl."), Dkt. No. 28, ¶¶ 1, 3, 6.) Pursuant to Rule 36, because defendant failed to respond to the Notice to Admit, it is deemed admitted and properly considered on this motion for summary judgment. See FED. R. CIV. P. 36(a)(3); Donovan v. Carls Drug Co., 703 F.2d 620, 651-52 (2d Cir. 1983); see also Stewart v. Hudson Hall LLC, No. 20 CV 885, 2021 WL 406743, at *1-2 (S.D.N.Y. Feb. 5, 2021); Ng v. HSBC Mortg. Corp., No. 07 CV 5434, 2011 WL 3511296, at *3-4 (E.D.N.Y. Aug. 10, 2011), modified, 2014 WL 4699648 (E.D.N.Y. Sept. 22, 2014).

a final quarterly payment of $16,073.  (Rule 56.1 Statement ¶¶ 8-9; Notice and Demand for Payment of Withdrawal Liability, dated June 27, 2018 ("Notice and Demand Letter"), annexed as Ex. E to the Harkin Decl., Dkt. No. 26-5.)  The Notice and Demand Letter outlined the payment schedule for All Faith Cemetery's withdrawal liability, specifying that the first payment was required to be made within sixty days of the letter and that further payments were required to be remitted by September 1st, December 1st, March 1st, and June 1st of every calendar year until the final payment was made.  (Rule 56.1 Statement ¶ 9; Notice and Demand Letter.)  All Faiths Cemetery admits to having received the Notice and Demand Letter, see Answer to Am. Compl. ¶ 14, and All Faiths Cemetery never challenged the withdrawal liability assessment or initiated arbitration, see id. ¶ 17.  In fact, All Faiths Cemetery made withdrawal liability quarterly payments on September 1, 2018, December 1, 2018, and March 1, 2019.  (Rule 56.1 Statement ¶ 10; Answer to Am. Compl. ¶ 15.)

All Faiths Cemetery failed to make the quarterly withdrawal liability payments due on June 1, 2019 and September 1, 2019.  (Rule 56.1 Statement ¶ 11; Harkin Decl. ¶ 8. See also Notice to Admit ¶¶ 2-3.)  On September 11, 2019, the Pension Fund notified All Faiths Cemetery that it was in default of the withdrawal liability quarterly payments and that the Pension Fund would accelerate the remaining unpaid withdrawal liability assessment unless the default was cured.  (Rule 56.1 Statement ¶ 14. See also Notice to Admit ¶ 5.)  All Faiths Cemetery did not cure its default within sixty days of notice; nor did it enter into an agreement with the Pension Fund to make those payments.  (Rule 56.1 Statement ¶ 12; Harkin Decl. ¶ 8.)

Based upon defendant's failure to make the required quarterly withdrawal liability payments and defendant's subsequent default, plaintiff contends that it is entitled to a judgment for the accelerated amount of the unpaid initial withdrawal liability assessment in the amount of

4

$645,998, plus interest, liquidated damages, and attorney's fees and costs. (See Amended Complaint, dated Feb. 10. 2020 ("Am. Compl."), Dkt. No. 11.) On December 18, 2020, after unsuccessful settlement discussions, plaintiff moved for summary judgment. (See Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, dated Oct. 12, 2020 ("Pl.'s Mem."), Dkt. No. 25.) A decision on the motion for summary judgment was held in abeyance for several months while the parties again engaged in settlement discussions. (See Order, dated Dec. 21, 2020.) On January 19, 2021, the parties reported that they had not been able to reach a settlement. (See Status Report, dated Jan. 19, 2021, Dkt. No. 30.) Accordingly, Judge Kovner directed defendant to file its opposition to plaintiff's motion for summary judgment on or before February 19, 2021. (See Order, dated Jan. 25, 2021.) Defendant never filed opposing papers. (See Letter, dated Mar. 5, 2021, Dkt. No. 31.) On May 17, 2021, Judge Kovner noted that the motion for summary judgment was considered fully briefed and referred the motion to me for report and recommendation. (Order Referring Motion, dated May 17, 2021.)

## DISCUSSION

### A. Standard of Review

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and decide only whether there is any genuine issue to be tried. Eastman Mach. Co. v. United States, 841 F.2d 469, 473 (2d Cir. 1988). "[T]he court is not to weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact . . . . Resolutions of credibility conflicts and choices between conflicting versions of the facts are

5

matters for the jury, not for the court on summary judgment." United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) (internal citations omitted).  A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Initially, the moving party carries "the burden of establishing that no genuine issue of material fact exists." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).  Once the movant has met its burden, in order to avoid summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998).  In deciding whether a genuine issue of material fact exists, the court is required to "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)).

In this case, the fact that defendant did not respond to the motion does not mean that plaintiff is automatically entitled to summary judgment in its favor.  Even "where the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion," the district court is still required to examine the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" Mt. Hawley Ins. Co. v. Abraham Little Neck Dev. Grp., Inc., 825 F. Supp. 2d 384, 395 (E.D.N.Y. 2011) (citing Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)).  One way that the moving party can meet its burden is to show "through the

6

verified statements of fact contained in its Rule 56.1 Statement and the evidence in the record" that there is an absence of a genuine issue for trial. Id. With these standards in mind, I now turn to plaintiff's argument in favor of summary judgment.

### B. Withdrawal Liability Under ERISA

ERISA, as amended by the MPPAA, "ensures that multiemployer pension plans are adequately funded by requiring 'an employer that withdraws from a multiemployer pension plan to pay its proportionate share of the plan's unfunded vested employee benefits,' an amount referred to as its 'withdrawal liability.'" Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. Canal Escorts, Inc., No. 14 CV 4575, 2020 WL 1472439, at *6 (E.D.N.Y. Mar. 26, 2020) (quoting Bowers v. Andrew Weir Shipping, Ltd., 27 F.3d 800, 803 (2d Cir. 1994)). See also 29 U.S.C. §§ 1381, 1391. "Withdrawal from a multiemployer pension plan occurs when an employer permanently ceases to have an obligation to contribute under the plan, or permanently ceases all covered operations under the plan." Gesualdi v. Seacost Petroleum Prods., Inc., 97 F. Supp. 3d 87, 97 (E.D.N.Y. 2015) (internal quotation marks and citations omitted). See also 29 U.S.C. § 1383(a).

Following an employer's withdrawal from a multiemployer pension plan, the plan sponsor must determine the amount of withdrawal liability, notify the employer of the amount, and provide a payment schedule. Bd. of Trs. of the UFCW Local 50 Pension Fund v. Baker Hill Packing Inc., No. 13 CV 1888, 2015 WL 867013, at *6 (E.D.N.Y. Feb. 27, 2015) (citing 29 U.S.C. §§ 1382, 1399); Gesualdi v. Scara-Mix, Inc., No. 14 CV 765, 2017 WL 9485710, at *12 (E.D.N.Y. Feb. 7, 2017), report and recommendation adopted, 2017 WL 945090 (E.D.N.Y. Mar. 10, 2017). "Once the employer receives notice of withdrawal liability from the pension plan, it must make payments pursuant to the plan's schedule within 60 days of receipt of the plan's

7

demand for withdrawal liability." Finkel v. Athena Light & Power LLC, No. 14 CV 3585, 2016 WL 4742279, at *6 (E.D.N.Y. Sept. 11, 2016) (citations omitted). An employer who disputes the sponsor's calculation of withdrawal liability must request a review within ninety days of the demand. See Bowers v. Transportacion Maritama Mexicana, S.A., 901 F.2d 258, 261 (2d Cir. 1990); 29 U.S.C. § 1399(b)(2)(A). If the parties are unable to resolve the dispute, either party may initiate arbitration proceedings within a sixty day period after the earlier of either the date of notification to the employer or 120 days after the date of the employer's review request. 29 U.S.C. § 1401(a). "[I]f the employer fails to request arbitration within the statutory time frame, it is barred from challenging the amount of withdrawal liability calculated by the plan." Trs. of Loc. 531 Pension Fund v. Flexwrap Corp., 818 F. Supp. 2d 585, 589 (E.D.N.Y. 2011) (citing 29 U.S.C. § 1401; ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 886 (2d Cir. 1988)). See also Labarbera v. United Crane & Rigging Servs., 08 CV 3274, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011) ("[A]n employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper notification will result in the court's adoption of the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated."). Additionally, if no arbitration proceeding is initiated, the amounts demanded by the sponsor become due and owing, and the plan's sponsor may bring a civil action to recover them. 29 U.S.C. § 1401(b)(1). See also Finkel v. Fred Todino & Sons, Inc., No. 08 CV 4598, 2010 WL 4646493, at *3 (E.D.N.Y. Oct. 8, 2010).

"If an employer defaults in making timely withdrawal payments, the plan is entitled to immediate payment of the entire unpaid amount of the employer's withdrawal liability, plus accrued interest from the date of the first scheduled payment not timely made." Flexwrap Corp., 818 F. Supp. 2d at 589 (citing 29 U.S.C. § 1399(c)(5)). "A 'default' is defined

8

as 'the failure to make, when due, any' withdrawal payment 'if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure' or 'any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.'" Id. (quoting 29 U.S.C. § 1399(c)(5)).

To prevail on a claim for withdrawal liability under the MPPAA on summary judgment, "a plaintiff must establish that: (1) defendant constituted an "employer" under the MPPAA prior to withdrawal; (2) defendant received notice of the withdrawal liability assessment against it; and (3) defendant failed to initiate arbitration as required by the MPPAA." Athena Light & Power LLC, 2016 WL 4742279, at *6 (citation omitted). See also Canal Escorts, Inc., 2020 WL 1472439, at *6. I will address each of these three elements in turn.

1. Defendant Was an Employer Under the MPAA

The MPPAA does not define the term "employer." However, the Second Circuit has construed the term to mean "a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer or in the interest of an employer of the plan's participants." Korea Shipping Corp. v. N.Y. Shipping Ass'n-Int'l Longshoremen's Ass'n Pension Tr. Fund, 880 F.2d 1531, 1537 (2d Cir. 1989) (internal quotation marks and citations omitted). "The MPPAA, in turn, defines the term "an obligation to contribute" to mean an obligation arising '(1) under one or more collective bargaining (or related) agreements, or (2) as a result of a duty under applicable labor-management relations law.'" Canal Escorts, Inc., 2020 WL 1472439, at *6 (quoting 29 U.S.C. § 1392(a)).

Here, there is no dispute that defendant was an employer within the meaning of the MPPAA prior to withdrawal. Various MOAs extending the CBA by and between Local 74

and All Faiths Cemetery provide that All Faiths Cemetery was a participating employer and was obligated to make contributions to the Pension Fund. (Rule 56.1 Statement ¶ 7; Harkin Decl. ¶ 4; Notice to Admit ¶ 1.)

### 2. Defendant Received Notice of the Withdrawal Liability Assessment Against It

Defendant admits that it received the Notice and Demand Letter in which it was notified of the assessment of its initial withdrawal liability. (Answer to Am. Compl. ¶ 14; Rule 56.1 Statement ¶ 8.)

### 3. Defendant Failed to Initiate Arbitration as Required by the MPPAA

Defendant also admits that it did not initiate arbitration with respect to either the determination that it had withdrawn from the Pension Fund or the amount of the withdrawal liability assessed against it. (Answer to Am. Compl. ¶ 17; Rule 56.1 Statement ¶ 13.) Defendant's failure to arbitrate necessarily results in the court's adoption of the sum proffered by plaintiff. See Labarbera, 2011 WL 1303146, at *5 (finding that where an employer fails to take action in a timely manner after being notified, the employer shall be liable for the full withdrawal liability amount asserted by the plaintiff). Defendant's failure to arbitrate pursuant to 29 U.S.C. § 1401(a)(1)(A) also "triggers an immediate waiver of the right to contest the withdrawal liability assessment as well as an acceleration of the timetable under which the assessment must be paid." Athena Light & Power LLC, 2016 WL 4742279, at *7 (citing Bowers, 901 F.2d at 265).

Thus, I find that the uncontested facts sufficiently establish the three elements necessary for plaintiff to prevail on its summary judgment motion for withdrawal liability under the MPPAA. I therefore respectfully recommend that plaintiff's motion for summary judgment be granted.

    C. <u>Damages</u>

"'In any action to collect withdrawal liability in which a judgment in favor of the plan is awarded, the court shall award the plan, in addition to the unpaid withdrawal liability, reasonable attorneys' fees and costs, interest, and liquidated damages.'" <u>Athena Light & Power LLC</u>, 2016 WL 4742279, at *8 (quoting <u>Nat'l Integrated Grp. Pension Plan v. Dunhill Food Equip.</u>, 938 F. Supp. 2d 361, 379 (E.D.N.Y 2013)). ERISA provides for statutory damages in the event of noncompliance with an employer's obligation to make contributions to a multiemployer plan under 29 U.S.C. § 1132(g)(2), which authorizes the Pension Fund to recover:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); <u>Athena Light & Power LLC</u>, 2016 WL 4742279, at *8-9 (citing <u>Seacost Petroleum Prods.</u>, 97 F. Supp. at 96-97).

    1. <u>Principal Amount of Withdrawal Liability</u>

As previously discussed, "[a]ny dispute concerning the Pension Fund's assessment of withdrawal liability has to be settled through arbitration, and an employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper notification will result in the court's adoption of the sum proffered by the plan." <u>Gesualdi v. Ava Shypula Testing & Inspection, Inc.</u>, 2014 WL 1399417, at *6 (E.D.N.Y. Apr. 10, 2014) (internal quotation marks, alterations, and citation omitted). "After [the] failure to [properly] request arbitration, a court

11

can adopt a proffered amount of withdrawal liability even in the absence of documentation as to how the figure was calculated." Trs. of the Local 138 Pension Fund v. Tax Trucking Co., 2015 WL 13446776, at *4 (E.D.N.Y. June 2, 2015) (internal quotation marks and citations omitted), report & recommendation adopted, 2017 WL 2779685 (E.D.N.Y. June 26, 2017).

Here, All Faiths Cemetery did not request any review of the Pension Fund's determination of withdrawal liability; nor did it initiate any arbitration proceeding to contest any aspect of the Pension Fund's determination. (Answer to Am. Compl. ¶ 17; Rule 56.1 Statement ¶ 13.) Therefore, withdrawal liability in the amount of $707,815, as determined by the Pension Fund, is fixed and incontestable. See, e.g., Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co., Inc., 270 F. Supp. 3d 593, 613 (E.D.N.Y. 2017) ("[W]here, as here, the damages sought consist, in part, of delinquent withdrawal liability payments and where the employer has otherwise failed to timely request arbitration, courts have the discretion to 'adopt the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated.'" (quoting Labarbera, 2011 WL 1303146, at *5)).

The Pension Fund set a payment schedule under which All Faiths Cemetery was to pay its withdrawal liability assessment. (Rule 56.1 Statement ¶ 8-9; Notice and Demand Letter.) The schedule consisted of thirty-four quarterly installments of $24,875, beginning on September 1, 2018, with a final quarterly payment of $16,073. (Id.) After All Faiths Cemetery failed to make its quarterly payments due on June 1, 2019 and September 1, 2019, see Rule 56.1 Statement ¶ 11; Harkin Decl. ¶ 8, the Pension Fund notified All Faiths Cemetery that it was in default and that the total amount of withdrawal liability would be due if the default was not cured in sixty days. (Rule 56.1 Statement ¶ 14.) The default was not cured, and the Fund accelerated the total amount due pursuant to 29 U.S.C. § 1399(c)(5). (See Rule 56.1 Statement ¶ 12; Harkin

12

Decl. ¶ 8.) Accordingly, I find that plaintiff is entitled to the remaining amount of withdrawal liability, and I respectfully recommend that plaintiff be awarded $645,998.[4]

    2. Interest

Plaintiff is entitled to "accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). Pursuant to 29 U.S.C. § 1132(g), the interest on unpaid contributions "shall be determined using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g).

In this action, the Pension Fund's Delinquency Collection Guidelines provide for interest from the date the contributions were due until the date paid at the rate of seven percent per year or two percent above prime, whichever is higher. (Delinquency Collection Guidelines, annexed as Ex. D to the Harkin Decl., Dkt. No. 26-4, Art. V, § A.) Plaintiff's actuarial firm calculated the interest due on the unpaid withdrawal liability from June 1, 2019— the due date of the first payment that was not timely made—through and including October 9, 2020 at a rate of seven percent per year, which amounted to $61,405.11. (See Declaration of Jay. K. Egelberg, dated Oct. 9, 2020 ("Engelberg Decl."), Dkt. No. 27, ¶ 6.) According to the actuarial firm's calculations, the amount of interest owed increases at the rate of $135.67 per day for each day after October 9, 2020. (Id. ¶ 6.) However, the actuarial firm does not indicate how the figures were calculated and plaintiff provides no supporting documentation to substantiate the actuarial firm's determination. This is "regrettable because the court is deprived of a meaningful

---

[4] As set forth in the Declaration of Jay K. Egelberg, an Enrolled Actuary who provides actuarial services to the Pension Fund, the value of All Faith Cemetery's remaining initial withdrawal liability assessment as of June 1, 2019, after crediting the three made quarterly payments, is $645,998. (See Declaration of Jay. K. Egelberg, dated Oct. 9, 2020, Dkt. No. 27, ¶ 5.)

13

opportunity" to validate this aspect of plaintiff's damages. See Baker Hill Packing Inc., 2015 WL 867013, at *11 (citation omitted). Nonetheless, based on the court's rough calculations, the figures appear accurate.[5] I will therefore accept the actuarial firm's computations, with the caveat that plaintiff should provide substantiating documentation in future cases. Thus, I respectfully recommend that plaintiff be awarded $61,405.11 in interest, plus additional interest at a per diem rate of $135.67 from October 9, 2020 until the date final judgment is entered in this case.

### 3. Liquidated Damages

As noted above, ERISA provides for liquidated damages "in an amount equal to the greater of . . . interest on the unpaid contributions, or . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). The Pension Fund's Delinquency Collection Guidelines provide for liquidated damages on unpaid contributions in the amount of twenty percent of the amount found to be due and owing. (Delinquency Collection Guidelines, Art. V, § B.) In this case, twenty percent of the amount due and owing is greater than the amount of interest on the unpaid contributions. Thus, I respectfully recommend plaintiff be awarded twenty percent of the amount due and owing, which amounts to $129,199.60 in liquidated damages.

---

[5] To determine a per diem rate of interest, one would multiply the delinquent withdrawal liability (in this case, $645,998) by a yearly interest rate (here, seven percent) to get the yearly interest (approximately $45,219.86). Dividing that figure by 365 days yields a per diem rate of $123.89. There are 497 days from June 1, 2019 to October 9, 2020. $123.89 x 497 = $61,573.35, which is slightly more than plaintiff's request. To determine the per diem rate of interest from October 9, 2020 through the date of final judgment, one would multiply the delinquent withdrawal liability ($645,998) plus the accrued interest ($61,405.11) by the yearly interest rate (here, seven percent) to get the yearly interest (approximately $49,518.22). Dividing that figure by 365 days yields a per diem rate of $135.67, which is the same figure plaintiff requests.

4. Attorney's Fees and Costs

Finally, plaintiff is entitled to reasonable attorney's fees and costs. See 29 U.S.C. § 1132(g)(2)(D); Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502 (2d Cir. 1995); Bd. of Trs. of UFCW Local 342 Pension Fund v. Merrick Associated Mkt., Inc., No. 11 CV 4310, 2012 WL 4049845, at *2 (E.D.N.Y. Aug. 21, 2012), report and recommendation adopted, 2012 WL 4049996 (E.D.N.Y. Sept. 13, 2012).

In the Second Circuit, courts calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008) (internal quotations omitted). In performing this analysis, the court has "considerable discretion." Id. at 190. Claims for attorney's fees in the Second Circuit generally must be supported by contemporaneous time records which "specify, for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

To determine what constitutes a reasonable hourly rate, this court looks to the hourly rates that attorneys routinely charge for comparable work in the Eastern District of New York. Local No. 46 Metallic Lathers Union & Reinforcing Iron Workers Welfare Tr. Fund v. Crops Design Corp., No. 12 CV 4218, 2013 WL 5460871, at *6 (E.D.N.Y. Sept. 30, 2013). In this district, the prevailing hourly rates are "generally between $300 and $400 for law firm partners, $200 to $300 for senior associates, and $100 to $200 for junior associates." LG Capital Funding, LLC v. 5Barz Int'l, Inc., No. 16 CV 2752, 2019 WL 3082478, at *2 (E.D.N.Y. July 15,

15

2019) (citing Tacuri v. Nithin Constr. Co., No. 14 CV 2908, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015)); see also Cabrera v. Schafer, No. 12 CV 6323, 2017 WL 9512409, at *11 (E.D.N.Y. Feb. 17, 2017), report and recommendation adopted, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017); Gesualdi v. Lubco Transp. Inc., No. 15 CV 6727, 2017 WL 946297, at *4 (E.D.N.Y. Feb. 22, 2017).

Plaintiff has submitted time records that indicate the date, duration, and nature of the work performed by its counsel. (Timesheets, annexed as Ex. G to the Silverman Decl., Dkt. No. 28-2.) Plaintiff requests a rate of $300 per hour for the 28.6 hours expended by Gary Silverman, Esq., resulting in a total of $8,580 in attorney's fees. (Pl.'s Mem. at 15; Silverman Decl. ¶¶ 1, 7-8; Time Sheets.)

Mr. Silverman has been practicing law in this district since 1986 and has "been involved with actions for the recovery of employee benefits on behalf of a variety of Taft-Hartley funds for substantially all that time." (Silverman Decl. ¶ 8.) I find the requested rate of $300 to be reasonable in light of the prevailing rates in this district for attorneys with comparable experience. See, e.g., Trs. of Leather Goods, Handbags, & Novelty Workers' Union Local 1 Joint Ret. Fund v. Cent. Fur Storage Co., No. 18 CV 7224, 2019 WL 3937132 (E.D.N.Y. Aug. 2, 2019) (finding partner's rate of $300 per hour appropriate in a default judgment action to accelerate withdrawal liability), report and recommendation adopted, 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019); Finkel v. Millennium Fire Servs., LLC, No. 18 CV 3538, 2019 WL 1605186, at *4 (E.D.N.Y. Mar. 29, 2019) (finding an hourly rate of $350 for partners reasonable in an ERISA default judgment matter). I also find that it was reasonable for counsel to devote 28.6 attorney hours to this case. See, e.g., Gesualdi v. Fortunata Carting, Inc., 5 F. Supp. 3d 262, 281 (E.D.N.Y. 2014) ("Courts have found that 25 hours is a typical amount of time to spend on a

16

straightforward ERISA default case."); Ferrara v. Metro D Excavation & Found., Inc., No. 10 CV 4215, 2011 WL 3610896, at *7 (E.D.N.Y. July 7, 2011) (approving 32.1 hours), report and recommendation adopted, 2011 WL 3625448 (E.D.N.Y. Aug. 16, 2011). Thus, I respectfully recommend that plaintiff be awarded $8,580 in attorney's fees.

      Plaintiff also seeks costs in the amount of $477.50. (Pl.'s Mem. at 16; Time Sheets.) 29 U.S.C. § 1132(g)(2)(D) directs a court to award reasonable costs when "a judgment in favor of the plan is awarded." 29 U.S.C. § 1132(g)(2)(D). A plaintiff who prevails in an action under ERISA is entitled to "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." Trs. of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(K) Sav. Plan v. Temperini Mech., Inc., No. 12 CV 5646, 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (quoting Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg, No. 08 CV 884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)). In this case, those costs include $400 for the filing fee and $77.50 for process server fees. (See Pl.'s Mem. at 16; Time Sheets.) I find that the filing fee and process server costs are reasonable costs. See, e.g., U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc., No. 12 CV 8753, 2013 WL 5363777, at *8 (S.D.N.Y. Sept. 26, 2013) (awarding costs for filing fees, copies, research, travel, and service of process). I therefore recommend that plaintiff be awarded $477.50 in costs.

## CONCLUSION

      For the reasons explained above, I respectfully recommend that plaintiff's motion for summary judgment be granted and that plaintiff be awarded: (a) $645,998 in unpaid withdrawal liability; (b) $61,405.11 in interest, plus additional interest at a per diem rate of $135.67 from October 9, 2020 until final judgment; (c) $129,199.60 in liquidated damages; (d)

$8,580 in attorney's fees; and (e) $477.50 in costs. Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Kovner and to my chambers, within fourteen (14) days. Failure to file objections in a timely manner may waive a right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72.

                                                           Respectfully submitted,

                                                           /s/
                                           ROBERT M. LEVY
                                           United States Magistrate Judge

Dated: Brooklyn, New York
       September 9, 2021